Mr. Matsui. May it please the Court, Brian Matsui on behalf of KIMONDA AG. The Commission's determination of non-infringement in the absence of domestic industry should be reversed. The LJA's decision rested entirely upon an erroneous construction of the etching step of the fabrication process of microchips. Rather than recognize that this etching step required only that a sufficient amount of the exposed insulating material over the active regions be removed. But that isn't what the claim says. It says removing the exposed portion. Yes, Your Honor. It says removing the and... Doesn't that mean you remove it all? No, Your Honor. The use of the definite article the is merely referring to where the etching is to occur in both claims 1 and claims 22. We would we would suggest that the Commission in its red brief... How does that help you? You still have to remove all of whatever is at that location which is the exposed portion. Don't you? No, Your Honor. It merely indicates that you need to remove a sufficient amount because there is another next element the planarization step which actually exposes the active regions. In claim 1 that's made very clear because it says the planarization step exposes the active regions. It would be unnecessary to say that if the etching step, the removing step, was the moment in which the active regions actually had to be exposed. We think that in the red brief the the Commission sets forth a good analogy as why removing that doesn't always have to mean all. It really depends upon the it says removing the snow. Removing the snow in the context of a road to clear the road wouldn't mean removing every single snowflake from the road. It would be understood by someone of ordinary skill in the art to be removing a sufficient amount to allow cars to pass. It would still be on it could still allow a small layer of snow for cars to drive over. There could be snow on the shoulders or in between lanes. That's the same thing that should occur here with respect to the 1899 patent in these claims. The purpose of the invention in this case is to reduce the amount of time it takes to planarize the surface of the of the substrate and it does in order to prevent the excess erosion of oxide between the shallow isolation trenches. In particular the written description makes this this very clear. In the summary of the invention in column 3... step is just removing the remaining unexposed portions? Well no your honor because all you need to from the written description it makes clear that you're trying to remove an amount sufficient to reduce the amount of time it takes. Where does that occur in the specifications? So in column 6 starting at line 50 of the... line 50 excuse me a second. Yes it says typically the amount of shortened the CMP step the planarization step. This is noting that a few lines up at line 50 in one embodiment shortening the CMP step is achieved by selectively removing portions of the oxide from the triangular shape oxide regions above the active areas. In addition in the summary of invention in column 3 line 56 the specification teaches that portions of the insulating layer is enabling the subsequent planarization step which exposes the active regions to be shortened. And so it's the planarization step that should be understood in claims 1 and claims 22 to actually require that the active regions be exposed. What the ALJ did in this case... I'm not clear. I had the same concern I think that Chief had. The unexposed insulating material above the active region is what is removed during the planarizing step. Am I wrong or right? That is where that is where insulating material is to be removed and it's... Right the unexposed insulating material not the exposed. No the exposed insulating material is supposed to be removed during the etching step. Right. And then when you after you remove the inverse active layer mass then they planarize the entire surface. What I'm not understanding is why I thought your argument was that the just the ITC's construction of the exposed limitation makes the planarizing stuff not work or not be operative or I thought that was your argument. It effectively requires that it's the planarizing step that is the step that requires that all the oxide be removed and that the active regions be fully exposed. But if you'd removed the exposed portion before wouldn't that make the planarization step go quicker the whole purpose of this invention? Certainly that would be one way to achieve it but it says an amount sufficient. It doesn't say it doesn't say all of that. If the patentee had intended for all of that exposed portion above the active regions to be removed it could have said so but it's better understood as indicating where the removal is supposed to happen to ensure that the purpose of the invention is achieved which is to reduce the time that the planarization step takes to prevent the oxide erosion. Wouldn't that require that all of that be removed at that point? I'm sorry your honor? Would that require all of the planarization be removed the oxide which is the insulation portion? Yes sir at the planarization step there would not be any of the oxide remaining over the over the active regions. That's the step in which the the patent ensures that that that all in effect all is actually removed. It's not the etching step where it's directing where it actually has to occur and what happened in this case with respect to the ALJ is it read removing the as removing all and as the snow example explains that doesn't necessarily have to mean the case. It depends upon the purpose of the invention and in addition it basically created a limitation from an embodiment disclosed in the patent. At A152 of the ID the ALJ notes the detailed description of the invention makes clear the invention's purpose is achieved by using for example an RIE which is described as an oxide selective. This is an oxide selective etching method and it goes on for several pages discussing how the RIE etching method is the type of removing that occurs at that step. The RIE etching method by being oxide selective uses the the resist or the base of the substrate as an etch stop and so in that particular embodiment it might remove all of that exposed insulating material but that's not required by the claims themselves. The claims themselves don't claim anywhere don't recite anywhere that you have to use an RIE etching method or that you have to use an oxide selective etching method and the written description more generally does not discuss the RIE etching method as the type of etching method that must be used in the removing step. So we think that under this course precedent it's very clear that the ALJ imported a requirement in a particular embodiment and create a limitation in the claims. We also think that that's exactly what the the Commission has done in its red brief on page 10 of its red brief it just it goes through a series of steps in the it goes through a series of steps in the removal process of the in the planarization process and it says the next step as shown below is the reactive ion etching the RIE process and so what it's what has happened here is that this particular embodiment and the limitation has been imposed to create a limitation in the claim language. That might be a little more persuasive though sir if it weren't for the claim language that we says exposing the the removing the exposed portion and that's the difficulty I'm having I mean all of that might be somewhat persuasive but you've got the broad claim language that doesn't limit it to a part of I mean you say the Commission imported the word all but you're trying to import the word some. Wait I'm reading it. If that is the case if that if that is the case then one should be looking at the written description and the surrounding claim rate language to determine what actually is required by by that etching step and if it's clear which we submit it is that that removing the does not mean removing all the or at least it doesn't have to mean removing all the to a person of ordinary skill in the art then the the specification the written description support our argument by discussing a portion of it being removed and discussing the planarization step as the point at which the active areas are are actually exposed. Is the RIE etching method the only method of removing the the exposed portion? No there would be other there are other types of etching methods that could be used and as we note in our reply brief one fact is that you that a prolonged etching step using something that would not be an oxide selective etching method or they could have the problem of of damaging the base of the substrate. Do you have any embodiment in your specification that only removes some of that exposed portion? We say that the the the general description there's there's not a specific embodiment that goes through in detail like the one that uses the are the the oxide selective etching method but the language of the written description in and of itself describes that the purpose is only to remove a portion with the idea behind it to to be to reduce the amount of time it takes in the subsequent planarization step to to prevent any oxide erosion. If I may reserve my time for a moment. You may. We're going to hear first from Mr. Rosenzweig. Very good your honor. Thank you Mr. Chief Judge and may it please the court. We're not here to judge the plain meaning of a patent specification that was written before the claims is issued were twice rejected and narrowed by the patent examiner during prosecution. The Commission submits that the plain language of the claims here is is easily understood by persons of ordinary skill in the art and really by any reader of these patent claims. We would have to agree with you that the reading that the administrative law judge made for the word the meaning all right. Yes your honor that removing a proper interpretation of the the is a definite article removing the exposed portion of the material to an ordinary reader means removing all of it and under this court's can moving the snow from the road removing the snow from the road. We we noted in our brief your honor that maybe there was an impossibility limitation that if you paid someone to remove snow and their snow remained between the granules of asphalt in your driveway that maybe that was sufficient like a matter of substantial performance of contract. The Commission believes that removing all the means removing all maybe there's an issue of doctrine of equivalence but Kimondi here did not actually ever argue a doctrine of equivalence. But but it is somewhat inconsistent to say that removing these snow from the driveway means removing all of the snow from the driveway then if in fact you allow a residual amount to remain in the driveway. We don't believe when we can get into substantial performance of contract we don't believe that it's inconsistent we do believe that maybe there's an alternative construction of remove the which means remove all that you possibly can until you reach a point of impossibility not remove all that is sufficient to achieve the purpose which is where they'd like to go. Well where they'd like to go which is set forth I think most clearly at page 5 of their reply brief is that the portion sufficient means any that the uppermost molecular layer of insulation is the only exposed part of the insulation and removal of that single molecular layer is thereby sufficient to well I I don't think we have to overstate either side's case. How do you deal with the part of the specification that Mr. Matsui showed us at column 6 where it says the amount of oxide removed is sufficient to shorten the CMP step planarization step? I think that that portion of the specification is consistent with the originally filed patent claim here there was originally one patent claim it didn't discuss how or to what extent the insulation was going to be removed then even after that patent claim was rejected and the applicant added a whole bunch of patent claims the amendments to claim 1 were still consistent with with that column 6. The claim that issued claim 22 was more specific and included removing the exposed removing the silicon oxide in the exposed regions and then the examiner rejected claim 1 again and the applicant and instructed the applicant to include all the limitations of claims 1 through 6 if the applicant wanted the claim to be allowed and dependent claim 5 in the application included the removing the exposed portion of the insulating material over the active regions we submit your honors that the is the most well it is the most common word in the English language it's a word that's used 600 times in the patent it's used 150 times in all the patent claims even in an asserted claim 22 the claim limitation that follows the disputed claim limitation here is removing the photoresist there's no dispute that all of the photoresist is removed would have wanted ordinary skill in the art prefer to leave a small layer to protect the substrate during the planarization step ordinary skill in the art understand there was evidence both were extrinsic evidence both ways about what a person of ordinary skill in the art would or would not do for the respondents here at page a 10,019 dr. braveman testified that a person of ordinary skill could practice the preferred method here it requires the use of a somewhat thicker nitride layer then kimanda would prefer to use in its industrial practices but that it is it is practicable principally in its reply brief kimanda tries to shift the focus from the word that to challenge what's meant by an exposed portion and I hinted at this before and I really do believe that they take this molecular portion and they're in their reply brief we submit that this makes little sense it really renders a surplus superfluous a lot of the claim language here which we know at page 22 note 11 of our brief there's no reason to include the exposed portion of language at all in this claim language if that's what kimanda intended kimanda could have instead claimed removing insulating material or removing insulating material over the active regions there was no need to add this level of specificity to the extent that a person of ordinary skill upon reading the word the and removing the exposed portion had any ambiguity about what the patent meant and we submit that that person would not this courts precedents teach to look at the specification and the specification teaches and it's preferred and only embodiment that the exposed portion all of it is removed by the etching process and leaves no ambiguity but then even after looking at that looking at the prosecution history with the history of narrowing the claims here makes clear that the patent claims as issued cover what they cover on their face even without looking at the remaining intrinsic record if the court has no further questions thank you let's hear from mr. Sostek may it please the court good morning your honors in fact your honor although it perhaps sounded perhaps like we were overstating the case at the reply brief of kimanda at page 5 they did in fact take the position that removing the very surface molecular layer of oxide is is sufficient to satisfy the claim removing the exposed oxide at the of the insulating material and in fact what they said was at page 5 that excuse me but they said at page 5 was here the only insulating material that is exposed is the insulating material on the very surface of the insulating layer which is not overlaying by any other material and whether the photo whether it be photoresist material or other insulating material so what they're really saying is the exposed a layer the exposed region and that exposed portion consists of simply the very topmost layer of oxide at the very top of the insulating material and if you remove that that would be sufficient to meet the elements of the claim they also say at the start of the removing step only the molecules at the very surface of the insulating layer on those sections of the insulating layer not what is the exposed portion the top or that the or is anything above the active surface exposed they say only the molecules at the exit surface are exposed and every single other molecule of oxide beneath the surface layer is exposed which which is what the brief argues which is what mr. Rosenberg was alluding to that that the reason that creates such problems for them as their position on what the exposed layer means is it basically reads out the preferred embodiment it reads out all the teachings in the specification and it reads out all the figures not to mention what the inventor said was the major purpose of the claim if you say that if I eliminate just the very top layer of oxide molecules that satisfies the claim then you have to deal with the rest of the claim that says see we have the problem going the other way I read the record to say that one of skill in the art wouldn't want to try to remove every last molecule as you are arguing they have to get every last molecule off that surface because you've got it an equal chance of damaging the active surface of the substrate so you wouldn't want to try and scrape down to the bottom of the road because you're record reveals and as was testified at trial by dr. Brabham at the section referred to by mr. Rosen's wife what the experts testified was that in fact in fact that's what you do come on that does right it makes sure it doesn't go all the way down because it doesn't want to damage the road well come on does that the we're Ella I'm sorry yeah we're LSI but what come on to said is that they don't go all the way down but in fact what the experts were the experts testified that one of ordinary skill in the art would recognize that the underlying silicon substrate would be a material would use would remove all of the insulating material it would naturally stop at the silicon substrate which is a different composition of material and becomes a natural etch stop and makes a clean surface substantially planar as the claim suggests at the surface of the substrate leaving only those triangles in the unexposed portion as the claim says which calls for you to then remove the unexposed portion of the triangles in the subsequent planarization step if for example you left all of the oxide except the surface surface layer or even a lot of oxide in the in the regions over the active regions before the planarization step you go right back to what the prior art told you was problematic about this and what the inventor was trying to circumvent or at least solve as a problem a lengthy chemical mechanical polishing step to take that oxide out of the exposed area over the active regions would cause the dishing and the degradation to the shell or trench isolation regions that this inventor was trying to circumvent and solve as part of his objective of the claim which is clearly what come on to recognizes I think in response to judge Guy Archer's question what mr. Matsui did say was yes in fact at the end of the etch step all of the oxide is in fact removed leaving just the unexposed oxide for the planarization step and that's exactly what the inventor was trying to get you to do but in order to get there at that point what you're doing is you're removing the photoresist through an ashing process so that all you're left with is these little triangles 62 on the figure at 677 and that's the very short planarization step that prevent that prevents the harm or degradation to the shallow trench isolation regions which is exactly what this goal was was intended to achieve when the inventor came up with the goal of his invention so no in fact it's not harmful to have the X go all the way down there's a natural chemical as the court found and as the testifying expert dr. Brobman testified to in the record and it's not a harm at all just like plows don't tear up the road necessarily actually the plow wouldn't tear up the road but if you use a snowblower with big gouges you don't want to use that snowblower to tear up the road which is why you want to clear the road with a plow and then if there's unexposed portions like where the cars are parked when you move the cars you can use a snowblower to take that portion away but it's faster shorter and it doesn't harm the road because it's a much more as you know the CMP process is a combination of chemical and mechanical polishing it's like a slurry on top of sandpaper and it is very harmful so that the goal of the invention was to dramatically reduce that by leaving the insulating portion wide open and completely barren when you move to the CMP step but their argument would have been much stronger if the claim had not been amended I'm sorry your honor their argument would have been much stronger the claim had not been amended during prosecution well if they had not conflated those six elements into one their claim would have been stronger but the problem with that is they would have been left with removing the insulating portion with a CMP step which would have run them directly into the prior arc the chatter G the poon the gocho and that's what they were trying that's the reason why they amended that's the reason why they amended and that's why the examiner when he looked at the claim said you have to conflate claims one through six because without that the the portion that you're referring to removing at least a portion is completely undefined we don't know where that portion is until you say it's the exposed portion you have no ability to locate a region that you're supposed to take the insulating material away from so he said you have to conflate one through six because otherwise you're just wandering in the wilderness and you're also running directly into the prior arc so that really was the problem with with what they tried to do so clearly the questions that you asked which is doesn't the insulating material mean all certainly when I tell my son or my daughter remove the dishes from the table and he comes back with three dishes and not the nine that are on the table I'm not a happy guy and when I tell my daughter wash the dishes in the sink and she doesn't wash all of the dishes in the sink that's not what I intended clearly the definite article the refers to all of the insulating material and it's only further supported by the fact that the claim says pattern the mask layer to expose at least a portion of the insulating material from the active regions and then removing the exposed portion is simply that portion that the mask left exposed the exposed portion is clearly the entire portion exposed by the mask in the preceding step I don't believe I that's where you have four and a half minutes thank you honor I just have a three brief points I mean the first the first is that a person of ordinary skill the art would understand these instructions differently and I just want to go back to that remove taking removing the dishes to the sink would be understood in the context of a parent and the dishes there whereas removing the exposed insulating material over the active regions must be understood in the context of what somebody of ordinary skill in the art would understand to be and here neither the Commission nor the interveners suggest that the RIE etching method is the only type of etching method that can be used they don't dispute that there are other types of etching methods and it's clear that if you were to if you were to have an etching method that would etch too long for an extended period of time to try to get all of that insulating material removed during the etching step you could damage the base of the substrate and that's not the intent of the patentee in this situation the idea here as we discussed as I mentioned before and in the written description was to remove a sufficient amount which is in column six of the written description to ensure that the subsequent plenarization step is they point out that that probably had reference to an earlier version of the claims and that you amended your honor the the examiner's notice of allowance issued the patent because of the use of an of an inverse active area mask and it's the examiner's statement of allowance stated the prior art of record does not teach or suggest the claimed invention in which an inverse active area mask is used to really to remove at least a portion of the insulating layer from the active regions is claimed so we would submit your honor that that that is entirely consistent with our argument the inverse active area mask was not taught anywhere in any of the prior art references and it is being used to make it easier to remove the exposed portion of the insulin material which a person of ordinary skill in the art would understand to mean removing an amount sufficient to to allow the subsequent plenarization step to be shorter I wanted to address also the the point that that the the other side made about removing only the top layer of the molecules or referring to there is where the etching is supposed to occur occur use of the definite articles indicating that that is the area where you're supposed to remove the oxide it I think that the written description makes clear that it's not just a small amount of oxide that needs to be removed in column 6 of the oxide on top of the narrow active regions is sufficiently short in duration to not have oxide erosion in the shallow isolation trenches and so the specification teaches that the amount of oxide that should remain over the wide active regions after the end of the removing step should be no greater than the amount of oxide that's originally found on the on the narrow active regions that that we believe supports the argument that you need to only remove amount of an amount of oxide that is sufficient to reduce the amount of time it takes for the subsequent plenarization step. Thank you Mr. Matsui.